and this time, Mr. Howard Dreimeyer. May it please the Court, unlike the 557 appeal, the 373419 appeal, concerns an issue of claim construction, which this Court reviews de novo. The central question is whether the without additional user input language of Claims 10 and 11 modifies only the phrase, performing a function, read in isolation, or the full preceding phrase, in response to the one-time pressing, performing a function, read in light of the full claim language. The Board construed the fuller phrase in the context of other limitations, which also appear in Claims 1 as well as 10 and 11, to mean a single press of the activation button initiates the function. The added language without additional user input modifies the full phrase and requires that the button press directly initiate performance. That means that the single press of the activation button initiates the function without additional user input. Mr. Howard Dreimeyer, can you help me understand your premise of your argument is that the claims should somehow be understood as talking about initiating a function rather than performing a function? And I see those two things as different from each other, but where are you drawing from the claim language the idea that, in response to a one-time pressing, the claim is simply calling for initiating the performance of a function without additional user input? First, I would note, Your Honor, that this specification never uses the word initiates. It uses the word performs consistent with the notion of initiates many, many times in this specification. But your question is about the claim. Before you go further, can we agree that, as a baseline matter, initiate and performs are two different things? Well, they can mean different things, but they don't necessarily mean different things. Like initiating a process and performing a process, to me performance would suggest the completion of that process, the fulfillment of the operation of that process, whereas initiating a process really only means triggering the commencement of an operation that will ultimately lead to the fulfillment of a process. Well, we know that the specification uses perform to mean, in some instances, initiate. And I'll use, as an example, column 8, lines 3 through 5, where describing the iris recognition function and later the password matching function, the disclosure is that these can be performed by pressing the activation button. Of course, they're not completely performed by pressing the activation button. The activation button initiates it. In fact, the full disclosure of the iris scanning function on column 7 to 8 discloses that pushing the home button would initiate a scanning function of the camera. The iris has to then be presented. The iris has to be scanned. And then it has to be compared. So it only means initiating the iris function. In fact, it's interesting that the construction that the board adopted and First Base argues for would preclude the iris scanning function, the face scanning function, the password entry function, and the hands-free function. And this is where I want to get to why their construction is inconsistent with the claim language, which was your question. The claim in 373, Claim 11, specifically claims an embodiment of hands-free function. The hands-free function can only function with the input of a voice. The voice input must necessarily come after. So turning on the microphone does not perform the function? Well, Your Honor, I agree with First Base when it said below that simply entering a state in which the device would be able to receive further user input is no function at all. That's the board at 823. But help me because I understood you to be making an alternative argument that if turning on the microphone is the performance of the hands-free function, that we find that in the prior arc in the iOS instructions. Yes, Your Honor. Absolutely. But, okay, where did you make that argument? I see a claim chart attached to the petition which sort of alludes to it, but I don't see any other place in your reply, for example, where that argument is articulated. Well, Your Honor. How is it that that argument is preserved? Well, Your Honor, we cite iOS and the voice control function, but we also refer back to Claim 1, Claim Chart 1G, and 1G reproduces the iOS disclosure about the hands-free function in its entirety. The board, in construing that disclosure which was recited and contained within the claim chart and is cross-referenced in 11E as disclosing that iOS upon a long pressing of the button, you hear a beep and then you can provide the voice. So the microphone has been activated in iOS as it's disclosed. The board understood that fully well from the disclosure. I'm not sure we're on the same page because I understand your first argument is that in order to perform the voice function that you have to actually have voice commands executing something and that therefore the claim language must be talking about initiating. And then as I understand, you have a backup argument that even if that's not the case, that there is actual performance of the voice command function because the iOS instruction shows that the microphone is turned on, right? That's right. And so I'm just not seeing that you really articulated that second argument. I guess your theory is that somehow you were blindsided when the board decided on this claim construction about the recognition function. We were focused on arguing that hands-free function should be construed the same way that fingerprint authentication is and that they shouldn't be able to cherry pick and say that some of the functions merely require activation and others require full performance. But the disclosures with respect to iOS clearly do disclose activating the microphone. If the board was going to adopt that view, iOS is fully disclosed and it's in the claim chart that's cross-referenced in 11E. But don't you have to argue it as sort of a backup argument rather than merely a perfunctory reference? Your Honor, we do say in the claim chart 11E that the function is performed without additional user input citing the voice control of iOS. So that is stated there very explicitly. And then we cite back in terms of what iOS discloses to the earlier claim chart. We also cite to the description of the embodiment in Figure 4 as described in Columns 7 through 8. Your reliance on iOS in the claim chart, it was for the second function, not the first function, right? The second function, which was more about the long pressing of the button? That's right, Your Honor. And so what I'm trying to understand is to what extent were you really trying to match up iOS with the claim phrase performing a function without additional user input? Whereas it seemed more like Griffin and Davis were what you were relying on for performing the first function. Well, Your Honor, the claim language is clear that it can be either the first or second function that is performed without additional user input. And that's why claim chart 11E includes reference to both Griffin-Davis and to iOS. So it is specifically referenced there. It says in the claim chart that these are disclosed without additional user input. It cites to the disclosures in iOS that are reproduced in respect to claim 1. And although the board says that this was unduly conclusory, it recognized when it was construing the same disclosures with respect to claim 1 that the hands-free function in iOS with a long time pressing, hear the beep, it's awaiting the voice command. It is available to give the voice command. So the microphone necessarily must be activated. But, Your Honor, I think I want to get back to our claim construction argument, which is our primary argument, because we think that it reads out the hands-free embodiment, which we don't think a function can function if it's not doing anything. We agree with the first explanation. At column 9 of the patent, of the 373 patent, when it describes the hands-free function, it's talking about how when you press the button, it will convert and switch the mode of the terminal to a hands-free function mode. And so I guess what I'm wondering in reading the specification that in the context of this claim, when the claim 11 talks about a hands-free function, maybe all that it's really contemplating in light of the specification is the switching of the terminal to a hands-free mode. And that's what the claim means when it's talking about hands-free. Your Honor, it says on column 9, voice communication function, SMS function, or internet function. None of those functions can be performed without the voice input. That's our point. And if the inconsistency is that the board adopted, allowed FirstBase to adopt such a narrow construction with respect to hands-free function but not apply the same thing to the fingerprint authentication, you could have the same thing. The fingerprint authentication would be activated waiting for the fingerprint just as the hands-free function is activated waiting for the voice command. But the other way in which the board's construction is inconsistent with the claim language is the last limitation in the 373 where it specifically says that wherein the touch screen display displays the lock screen, I'm sorry, the second to last, wherein at least of the first and second functions is initiated subsequent to changing to the active state and displaying the lock screen. So if the fingerprint scanning has to be part of the fingerprint authentication function, which is how they avoid our argument. They distinguish between hands-free and fingerprint for the earlier one. If that is part of the function and the fingerprint authentication function does not initiate until after the screen has switched to the active state, then it must necessarily come after the pressing of the activation button. This underscores the point that we made with respect to inconsistency. The board recognized that the numerous references to initiate in the claims, in the 419, it's claim 10, uses the phrase initiates describing the relationship between the one-time pressing and fingerprint authentication. One-time pressing initiates the fingerprint authentication. That's at lines 42 to 43. The fingerprint authentication function initiated by one-time pressing, that's at lines 45 to 46. And later, that in response to one-time pressing for a long time is associated with initiating hands-free operation of the terminal. So as I understand it, you're asking us to think of the claim word initiate and the claim word perform as interchangeable, even though they are different words commonly with different meanings. In this context, especially where the specification never uses the word perform. So every instance... It does use perform. I mean, it never uses the word initiate. So every time that initiate appears here and is looking for written description, it has to come from a description about performs. And as I've said, there are numerous instances where the specification uses the word performs and performing upon or by pushing the activation button to mean only initiates because, of course, an iris scan cannot happen without a further input after the pressing. So I do want to specify that we have one other alternative argument before I sit down, and that is Griffin. The board acknowledged with respect to Griffin in Claims 1 in describing it that it was a single action, a single action with two inputs. In their description of applying Griffin to the prior art, all they talked about was the fact that Griffin had two inputs. Two inputs, we know that that's required. First base acknowledges it. But it was a single action, a single action with two inputs. That's what Griffin discloses. The board never discussed that, just as with respect to iOS. It never discussed... But my understanding of Griffin's two inputs is that you wouldn't do the two inputs with a single press of a button. There has to be some kind of gesture so that you can actually make contact with two separate inputs that are located in two different places. Well, Griffin describes it as a single action, single continuous action, just as you would have to have two inputs. By pressing the button, it has to both press the button and then have a scan. So there are two actions. They may be separated by very little time. That's what Griffin is describing, a single action with two inputs. But we're not relying exclusively on Griffin. We're relying on Griffin with Davis, Your Honor. So the points I wanted to emphasize is that the board understood that the word initiates, as used repeatedly throughout the claims, not the specification because it never does appear there, means that performs in the clause we're construing must mean initiates. That's in claim one. First base did not appeal that. If you apply the same construction to claims 10 and 11, Apple would prevail. Thank you very much. Thank you. We'll give you two minutes for rebuttal. Mr. Granahan? Thank you, Your Honors. May it please the court. The court should affirm the board's final written decision finding that the challenged method claims of the 373 and 419 patents are patentable. Almost Apple's entire argument in this case is premised on ignoring claim language, and that claim language is without additional user input, which appears— The second-to-last limitation in claim 11 of 373 when it talks about initiating, where it says the first and second— at least one of the first and second functions is initiated subsequent to changing the active state and displaying the lock screen in response to the one-time pressing. The second-to-last of the claim 11 of 373 patent, Your Honor? Right. I just read it out loud. I'm trying to understand what is the point of that limitation. If we were to agree with you that above in claim 11, the reference to in response to the one-time pressing, in addition to changing to the active state, there is the performing of at least one of the first and second functions without additional user input other than the one-time pressing. So what is this other limitation down here? What work is it really doing, that second-to-last limitation? Sure, Your Honor. So the first limitation requires that at least one of the first and second functions be performed without additional user input. Right. No, I'm talking about the second-to-last. Can we just talk about that? What is that trying to communicate to us? And so the second-to-last limitation requires at least one of the first and second functions as initiated subsequent to changing to the active state. And so, for example, let's say the first function is performed without additional user input. What about the second function? The second function could be covered by this second limitation, and the second function could be the one that is initiated subsequent to changing to the active state and displaying the lock screen in response to the one-time pressing. So you're talking about for this second-to-last limitation, it is necessarily talking about the other function than the function that is being performed in the earlier limitation in the claim? I don't think it would have to be different, Your Honor. I think as the— It would have to be a different function, wouldn't it? I don't think it would. The first function, upon a one-time pressing, the display could turn on, and then the first function can be performed without additional user input. I think that would satisfy both claim limitations, even though the display turns on first and then— I don't understand that. Well, the without additional user input limitation, I don't think, says anything about the timing of turning on the display. It seems to suggest that some functions have to be performed without additional user input, and some have to be performed later with user input, right? I don't know what the significance of that is for your claim construction, but— I don't think another would have to be performed with additional user input. I don't think that would be— We're trying to read these two limitations, and we're trying to draw a straight line through your claim, or is there some kind of internal inconsistency in your claim, if we were to agree with you on the key limitation here of performing without additional user input and trying to make sense of this other limitation towards the bottom of the claim. All it says is one of the two functions has to be initiated subsequent to changing to the active state. So, if it was initiated later, it would have to be performed later, right? All the without additional user input language requires that it be performed without additional user input. I don't think it precludes first turning on the display, as long as the display is turned on and the function is performed without additional user input. What about the initiate versus perform? Why is this claim talking about merely initiating one of the two functions down here towards the end of the claim? Why is it talking about initiating it? Yeah, what is going on? Can you walk me through the logic of what this particular limitation is calling for? That's why I was asking if this is talking about the other function. If the earlier function is the first function, for example, that is being performed without additional user input, then for this claim to be internally logical, wouldn't it necessarily be the second function, i.e. not the first function, that is simply being initiated? I don't think so, Your Honor. I don't think there's any inconsistency. I think that the display could be changed to the active state and display lock screen in response to the one-time pressing of the activation button and the function being performed without additional user input. I don't see any inconsistency between those. All right, I won't belabor the point. I think this is also not an argument that I think Well, we're confused because we don't understand why the claim is talking about initiating anything if the key limitation of performing a function without additional user input, in your view, requires the total performance and completion of that function. So why is there yet a separate limitation in both Claim 11 of the 373 and Claim 10 of the 419 also talking in terms of merely initiating a function or a fingerprint authentication step? I just think there are two different requirements, Your Honor. One relates to when the display turns on and if one of the functions is performed after the display is turned on, then that would meet this limitation. But that doesn't say anything about whether it would meet the without additional user input limitation. I don't believe there's any inconsistency between the two. Two different functions. Mr. Granahan, perhaps it would be helpful if you could give us an example of some functions instead of just first function, second function. Give us some examples of some actual functions and walk us through what this claim covers. Well, so the Claim 11 of the 373 patent says what functions are covered. One is, for example, a hands-free function. Another is a fingerprint authentication function. So, for example, let's take a hands-free function as the first function. The user could press the button, the display could turn on first, and then the hands-free function could be performed. I think that would meet all the limitations. What do you mean by hands-free function can be performed? The specification describes the hands-free function as really entering into another mode, a hands-free mode. Right, so just activating the mic, microphone, is all, in your view, is required for performing a hands-free function. That's correct. Is that correct? In that case, that's correct. Okay. Okay, I'm sorry, keep going with your example. Well, that was really the end of my example. In that case, the function would be initiated subsequent to changing to the active state, and it would have been performed without additional user input. And I think it's important to note here, we've been talking about these two different limitations, one of which uses performs and one of which uses initiates. The claims themselves use the term perform and initiate, so there must be a difference between the two. Can we move, before you run out of time, to what I see as Apple's backup argument as to Claim 11, or alternative argument, about how the iOS reference still meets Claim 11's performance of a function without additional user input, because the iOS reference talks about activating a mic based on pressing a button. And you agree that that would satisfy performance of a function without additional user input. So why isn't that limitation in Claim 11 met by iOS? A couple of points, Your Honor. One, all they said in their papers below was a statement that the hands-free function is performed without additional user input, followed by some citations. They did not explain how this hands-free function is performed without additional user action. Let's put that to the side, because we can discuss that after you answer my question. What's the real answer to the question of iOS discloses, by the pressing of a button, the activation of a microphone? You agree that performance of hands-free function without additional user input requires nothing more than pressing of the button to switch a terminal to hands-free mode. So why doesn't the iOS, therefore, teach this limitation of performing a function without additional user input? Well, so the portions that Apple cited to for iOS, it actually never says anything about a microphone. Without the factual development, we don't know... It talks about voice activation. It does, Your Honor, but we don't know exactly what's involved within the device or something with activating the hands-free function. Of course... It didn't rely on that portion of iOS for rejecting Claim 1? No, it did, Your Honor. My point is that iOS doesn't say anything about activating a microphone in this case. And so we don't know exactly when the microphone is activated. And the problem, the real problem is, because this was only presented in a few lines in a claim chart, there was no factual development on this issue. And let's just say it does disclose activating a microphone. There was no factual development on the motivation to combine related to Claim 11 as opposed to Claim 1. This is a backup argument that was not made to the Board. Didn't the Board find that there was motivation to combine Griffin-Davis and iOS as to Claim 1? It did, Your Honor. And there's no appeal on that question, right? That's correct, Your Honor. So there is a fact-finding that, yes, there's a motivation to combine all these references, including iOS. That's correct, Your Honor. There is with respect to Claim 1, but as the Board found, Claim 11 requires something different. And the Board did not find that there was. What is it that's different about Claim 11 if the underlying fact-finding is iOS teaches the performance of a hands-free function by triggering this voice activation? Well, the timing requirements of – I'm sorry, not the timing requirements. The requirements of Claim 11 are different in that they require performance without additional user input. There was no explication of putting aside Claim 1, why a person with a learning skill in the art would have, for example, been motivated to combine iOS with Griffin-Davis. But is there any additional user input required by iOS other than the pressing of the button to convert the phone to a voice activation mode? I think the answer is no. I don't think there is based on the face of the reference, Your Honor. But again, this was only presented in a couple of lines, so there was simply no factual development on that point. And I do want to stress, Your Honor, that this argument only affects the 373 patent, and we're here on the 373 and 419. I understand that. So this would not result in a – I'm just wondering out loud why wouldn't we remand the question on whether the board needs to address whether the iOS reference meets this limitation of performing a hands-free function without additional user input, given that it didn't actually say anything about that in the decision. It talked about why Griffin doesn't meet that limitation. It talked about why Davis didn't meet that limitation, but it didn't say anything about why iOS didn't meet that limitation. And all three references are cited in the claim chart as to Claim 11, and then Claim 11 additionally cross-references to Claim 1 in the claim chart, and there there's a fuller explication about why iOS's voice activation mode meets the performance of a hands-free function. But the analysis for Claim 1, Your Honor, does not say anything about whether it meets this without additional user input limitation. Had Apple said more, then maybe a remand would be warranted. But at this point, their analysis that they presented to the board was entirely conclusory, and Apple cannot meet its burden based only on a conclusory argument. I understand you're saying it's conclusory, but we don't have anything from the board saying that, as to the iOS reference, Apple's argument was too skeletal and too conclusory. The board's opinion, I think as you would acknowledge, is entirely silent as the iOS manual, leaving me to wonder if the board just overlooked it, never addressed it, and so we don't have any way of being able to tell what the board thought. Perhaps the board didn't think anything because it missed it. The board may not have mentioned iOS specifically there, but it did quote Apple's argument from the claim chart which mentioned iOS, and then the board followed it up by saying that this argument is too cursory to meet its burden. So I think whether it discussed iOS further, it did consider the argument and found it to be too cursory. Where did it say that? It said that on A45. What page was that again, Your Honor? A45, the final paragraph. Well, the middle paragraph, it identifies the petitioner's arguments, citing to Griffin, then Davis, and then voice control iOS, and then it miscited paragraph 28 of iOS when it was paragraph 38, and then 48 and 77, and then the next paragraph it says we find these cursory statements by petitioner are insufficient, and then it further goes on and talks about Griffin and Davis carrying over to A46, but it never says anything about iOS. And just based on a plain reading of iOS, it does look like that the mere pressing of a button meets your conception of what a hands-free function is, which is nothing more than converting something over to voice activation. So, Your Honor, I was referring to page 111 of the appendix. This is an example. This is from the 373 final written decision in which the board sets out Apple's entire argument on this point, starting in the middle paragraph it quotes. I'm sorry, what page? Page 111 of the appendix. That's not part of the decision. Yes, this is part of the board's decision on the 373 patent. What is this? Okay. I can't tell. That might be identical to A45. Yeah, it seems to be. All right. Well, on A111, what do you want to point us to? Pardon, Your Honor? What do you want to point us to at page A111? I was just pointing to where the board sets out Apple's entire argument on this point for the without additional user action on the 373 patent. It quotes it, starting in no additional user input in the middle paragraph there, and then the very next paragraph it starts with, we find that these cursory statements by petitioner are insufficient to show that the proposed combination teaches the without additional user input limitation of claim 11. So I think this shows that the board did consider the argument and rejected it as too cursory. Interestingly, the board here at A111, it doesn't recognize that a portion of Apple's arguments as to this limitation of claim 11 was cross-referencing sections of claim 1 of its claim chart, where there's a fuller explanation of its theory on iOS. And again, the same problem arises that at A111, A112, like A45, 46, the board is only talking about Griffin and Davis. It doesn't say one thing about iOS. And I understand that, Your Honor. I just mean in the middle paragraph, it does mention iOS. I think the cross-reference doesn't help it because the analysis for claim 1 does not analyze this without additional user input limitation. And I see I'm well over my time. So unless there are further questions. Thank you, Your Honor. Just to start quickly with the alternative argument, as Your Honor suspected, the argument with respect to the hands-free only requiring activation of the microphone did not arise until the SIR reply. So in the patent owner response in 373, there was no attempt to distinguish between claims 1 and 11. And so our reply did not address that argument because it wasn't raised until the SIR reply. But I do want to – You could have – if you thought there was an alternative argument here, you could have made it or you could have asked for an opportunity to make a further submission. But you didn't and all we've got is this claim chart, right? Well, what we have is the fact that there is a specific claim or assertion that iOS discloses without additional user input, referring back to the disclosures in iOS that are contained in full in claim 1 part of the claim chart that the board recognized disclosed activation of the microphone. Where is the discussion of this in the claim chart on claim 1 of the hands-free? On claim 1, it's in claim chart 1G, I believe. 1G? I don't have the claim chart with me, but that's what I have in my notes, Your Honor, where we reproduce in full iOS's – A350. And you're right. So, Your Honor, in order – I do want to say that at the very least, I think that this calls into question that there is ambiguity, including the fact that the board itself construed the word performs to mean initiates with respect to claims 1. We should look to the specification. There is no disclosure of this in the specification. The specification, as I said before, uses performs to mean initiates many instances. And in claim 419, right after the without additional user input language, it says that the terminal operates such that, and then describes in fuller detail how the terminal operates. And each instance, it describes the relationship between the one-time pressing and the function as initiating the function. The board acknowledged that that meant that the word performs should be construed as initiating within the context of claim 1, which has all the same language except for this without additional user input. I thought the board as to claim 1 just simply saw claim 1 as open to the possibility of additional inputs being made in order to actually perform to completion the recited functions, not that the board was reading the word perform in claim 1 as to be merely nothing more than initiate. Well, it construed the full phrase as requiring a relationship only between the one-time pressing and initiating the function. And if without additional user input modifies that whole phrase, then it means that that has to happen. The one-time pressing has to initiate the function without any additional user input. That has to be direct. In the language of column 4, it has to be immediately operating. But it doesn't require, as Your Honor said, that it operate to completion, that there can be no additional user input during the performance. That's adding words to the language that doesn't appear there. And again, at the very least, this is ambiguous, and so you should look to the specification. Look to how the word performs is used in the specification, repeatedly used in a way that is consistent with initiates as describing, for example, the disclosed embodiments, the one that is disclosed and discussed in detail, which is the iris recognition function, in which it is explicit that the function is called up by the one-time pressing, but then requires that the camera that's activated by it be presented with an iris that is scanned and then compared. So the user input has to. I think we're about out of time. Any more subverted questions? Thank you, Your Honor. Thank both counsel. The case is submitted. Now, for the next case, one counsel is going to appear by video, so I think we'll take a brief recess here while Courtroom Deputy sets up the video. And Judge Lynn, if you can just stay on the line, we'll be back. Yes, I'll stand by. Okay. So we'll take a brief recess. Court will take a brief recess. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. I'm sorry. Oh, that's good. Sorry. I'm sorry. I'm sorry. I'm sorry. Can you hear us? Yes, I can hear. Can you hear me? Yes, we can. Thank you. And we'll confirm it again, but generally can you see the timer? Yes, I can. Thank you.